UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**LAMON LAMAR BARNES,**
        Plaintiff,

    v.                                      Case No. 11-CV-00968

**BROWN COUNTY, TROY STRECKENBACH,
GUY ZIMA, JOHN LUETSCHER,
DENNIS KOCKEN, LARRY MALCOMSON,
PHIL STEFFEN, HEIDI MICHEL,
MISTY ANDERSON, and RALPH LEYENDECKER,**
        Defendants.

---

## DECISION AND ORDER

Pro se plaintiff Lamon Barnes brings this lawsuit under 42 U.S.C. § 1983. After screening, plaintiff was allowed to proceed on a claim that Brown County and the individual defendants, officials working at the Brown County Jail, violated his Fourteenth Amendment rights by applying Wisconsin's "Pay for Stay" statute, Wis. Stat. § 302.327, to pretrial detainees. Before me now are plaintiff's motion for partial summary judgment and defendants' motion for summary judgment.

### I. BACKGROUND

On January 11, 2011, plaintiff was placed into custody by Brown County Sheriff's Deputies and transported to the Brown County Jail.[1] After booking, plaintiff received a Financial Disclosure Statement and an inmate notice stating that he would be charged a

---

[1] The Facts are taken from the defendants' proposed findings of fact and affidavits and documents submitted by the parties. Plaintiff's proposed findings of fact present legal questions rather than factual assertions.

lock-up fee of $20.00/day. The notice cited Wis. Stat. § 302.372 and informed him that 25% of the money in his jail account would be collected to cover the fee. On July 8, 2011, plaintiff filed a grievance challenging Brown County Jail's daily lock-up fee on the ground that Wis. Stat. § 302.372 does not apply to pretrial detainees. Jail officials dismissed the grievance on July 15, 2011 and dismissed his subsequent appeal. They advised plaintiff that a resolution from the Brown County Board of Supervisors required the jail to collect money from pretrial detainees and that any money collected would be returned if he was not convicted.

On February 2, 2012, plaintiff was found guilty in his criminal case, and, on March 30, 2012, plaintiff was sentenced to twenty-two years in state prison and ten years of extended supervision. From his initial booking until his transfer to the state prison system, plaintiff accumulated $9,160.00 in daily lock-up fees. Brown County Jail collected $324.89 from plaintiff's jail account to cover these fees.

Wisconsin Statute § 302.372(2)(a) provides that "a county may seek reimbursement for any expenses incurred by the county jail in relation to the crime for which a person was sentenced to a county jail." The county may seek "[f]rom each person who is or was a prisoner, not more than the actual per-day cost of maintaining that prisoner, as set by the county board by ordinance, for the entire period of time that the person is or was confined in the jail, including any period of pretrial detention." Wis. Stat. § 302.372(2)(a)1. The statute also requires a county to disclose the collection of fees to prisoners before seeking reimbursement and allows the jailer to choose the method it uses to seek reimbursement. Wis. Stat. §§ 302.372(2)(b) and 302.372(2)(d). "The jailer may charge a prisoner for the expenses . . . while he or she is a prisoner," Wis. Stat. § 302.372(5), or may commence

2

a civil action in circuit court to obtain a judgment for the expenses after a prisoner's release, Wis. Stat. § 302.372(6).

Defendants have presented evidence that Brown County is in the process of preparing a new ordinance related to its daily lock-up fees that will preclude the jail from collecting daily lock-up fees from pretrial detainees.

## II. DISCUSSION

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." Anderson, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. Plaintiff seeks summary judgment on his claims against the individual defendants. Defendants seek summary judgment on all of plaintiff's claims.

Plaintiff asserts that Brown County's lock-up fee policy, which the individual defendants enforced, violated his Fourteenth Amendment rights because it constituted punishment of pretrial detainees and denied him the right to procedural due process. Defendants argue that the court should not consider the merits of these claims for several reasons. First, they argue that plaintiff should have filed a mandamus or declaratory judgment action in state court before initiating this action. However, in cases alleging a due process violation based on an established governmental procedure, the existence of a post-deprivation claim under state law does not preclude a plaintiff's § 1983 claim. See

3

Roehl v. City of Naperville, 857 F. Supp. 2d 707, 718 (N.D. Ill. 2012) (citing Zinermon v. Burch, 494 U.S. 113, 138–39 (1990)). Second, defendants argue that plaintiff's claims are moot because he has been convicted and Brown County is adopting a new policy that will explicitly prohibit jail officials from charging pretrial detainees for daily lock-up fees. Although plaintiff's claim for injunctive relief is moot, Maddox v. Love, 655 F.3d 709, 716 (7th Cir. 2011), his claim for the return of his money is not. Thus, plaintiff retains "a legally cognizable interest" in the outcome of this case which satisfies the live case or controversy requirement. See Yassan v. J.P. Morgan Case & Co., No. 12-2313, 2013 WL 717481, at *7 (7th Cir. Feb. 28, 2013). Third, I reject defendants' claim that Brown County is entitled to legislative immunity. "Municipalities do not enjoy any kind of immunity from suits for damages under § 1983." Benedix v. Village of Hanover Park, Ill., 677 F.3d 317, 318–19 (7th Cir. 2012).

Thus, I will consider whether the daily lock-up fee might be considered unconstitutional punishment of pretrial detainees. It is a fundamental principal that the government may not subject a pretrial detainee to any form of punishment for the crime for which he is charged. Bell v. Wolfish, 441 U.S. 520, 535 (1979). Any other rule would undermine the basic proposition that a person is presumed innocent until proven guilty. Id. When determining whether a condition of pretrial detention is constitutional, "[a] court must decide whether [a] disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." Id. at 538. Absent a showing of intent to punish, this determination "generally will turn on 'whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it

4

appears excessive in relation to the alternative purpose assigned [to it].'" Id. (quoting Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168–69 (1963)).

There is no evidence that Brown County was motivated by a desire to punish pretrial detainees when it collected lock-up fees from them. Applying § 302.372, Brown County did not collect any more than "the actual per-day cost of maintaining [a] prisoner." Wis. Stat. § 302.372(2)(a)1. And it further limited the fees it collected to no more than 25% of the money deposited in a detainee's jail account. Thus, the policy appeared to be rationally related to the county's legitimate interest in "effective management of the detention facility" and not excessive in relation to that purpose. See id. at 539. The policy helped to defray the cost of housing people at the jail and the county returned the money collected if a detainee was acquitted. Therefore, while Brown County arguably violated § 302.372 by charging plaintiff as the fees were incurred rather than after his conviction, its policy did not amount to the unconstitutional punishment of pretrial detainees. The Fourth Circuit reached a similar conclusion when assessing a Virginia law that allowed a jail to collect $1.00/day from pretrial detainees to defray the cost of housing them. Slade v. Hampton Roads Regional Jail, 407 F.3d 243, 250–52 (4th Cir. 2005).

I now turn to plaintiff's claim that defendants violated his right to procedural due process because the procedures provided at Brown County Jail were insufficient to protect his property interest in the money in his jail account. The Due Process Clause of the Fourteenth Amendment prohibits a state from "depriv[ing] any person of life, liberty, or property without due process of law." I consider two questions when reviewing a claimed violation of procedural due process: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State, the second examines

5

Case 2:11-cv-00968-LA   Filed 03/30/13   Page 5 of 8   Document 112

whether the procedures attendant upon that deprivation were constitutionally sufficient." Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989) (citations omitted). Due process "'is flexible and calls for such procedural protections as the particular situation demands'" in order "to minimiz[e] the risk of error." Greenholtz v. Inmates of the Neb. Penal and Corr. Complex, 442 U.S. 1, 12–13 (1979) (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)). In deciding what process is due, courts consider (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest," (3) "the probable value, if any, of additional or substitute procedural safeguards," and (4) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." Mathews v. Eldridge, 424 U.S. 319, 335 (1976). "The ultimate balance involves a determination as to when, under our constitutional system, judicial-type procedures must be imposed upon administrative action to assure fairness." Id. at 348.

I find that plaintiff's interest in the money in his jail account was a property interest protected by the Due Process Clause. The law is clear that individuals have a property interest in their own money, and a court looks "not to the 'weight' but to the nature of the interest at stake." See Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 571–73 (1972); see also Roehl, 857 F.Supp.2d at 712. Thus, I will consider the Mathews factors. First, the private interest at stake in this case was 25% of the funds in a person's jail account. If the county wanted to collect more than that, it waited until a person was released and initiated a civil proceeding in circuit court. Second, there was almost no risk of erroneous deprivation. The calculation of $20.00 per day and the deduction of 25% from each person's account up to that amount is essentially a ministerial task. Third, there would have

6

been little value in requiring additional procedural protections. Brown County did not hold hearings before imposing lock-up fees, but it did provide inmates with a grievance procedure that they could use to dispute errors in calculating fees after the fact. Plaintiff claims this post-deprivation grievance procedure was insufficient, but that is because he was attempting to use it to overturn the entire practice of collecting lock-up fees from pretrial detainees. A pre-deprivation hearing would also be futile because it is the prisoner's conviction (or lack thereof) that determines whether the money is actually due or will be repaid. Fourth and finally, the county has an interest in having inmates share the costs of incarceration and requiring pre-deprivation hearings would defeat the cost-saving goal of the lock-up fee policy. Therefore, I find that defendants did not violate plaintiff's right to procedural due process. Both the Fourth and Sixth Circuits have reached similar conclusions when reviewing procedural due process claims in connection with lock-up fees charged to pretrial detainees. See Sickles v. Campbell County, Kentucky, 501 F.3d 726, 730–32 (6th Cir. 2007); Slade, 407 F.3d at 253–54.

    Because I conclude that all of the defendants are entitled to summary judgment on the merits, I will not consider the individual defendants' alternative argument that they are entitled to qualified immunity.

7

## III. CONCLUSION

**THEREFORE, IT IS ORDERED** that plaintiff's motion for partial summary judgment (Docket #42) is **DENIED**.

**IT IS FURTHER ORDERED** that defendants' motion for summary judgment (Docket #55) is **GRANTED**.

The Clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 30th day of March 2013.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge